MANSER v. ASTORIA VENEER MILLS.

(Supreme Court, Appellate Division, Second Department.   October 27, 1911.)

1. MASTER AND SERVANT (§ 121*)—INJURY TO SERVANT—GUARDING MACHINERY
—STATUTORY OBLIGATIONS.
   Where the duties of an employé had no relation to an unguarded ma-
chine, causing injury to the employé, the employé, suing therefor, had no
standing under Labor Law (Laws 1897, c. 415) § 81, requiring the guard-
ing of machinery, except as leaving the machine unguarded had a bear-
ing on the question of the reasonable safety of the place given the employé
for his work.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
228–231; Dec. Dig. § 121.*]

2. APPEAL AND ERROR (§ 263*)—QUESTIONS REVIEWABLE—INSTRUCTIONS.
   Where defendant's exception to the denial of his motion to dismiss
the complaint and an order denying his motion for a new trial on the
usual grounds fairly raised an issue involving the correctness of an in-
struction not excepted to by either party, the question involved was re-
viewable on appeal.
   [Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 263.*]

3. MASTER AND SERVANT (§ 121*)—INJURY TO SERVANT—CAUSE—EVIDENCE.
   Where, in an action for injuries to an employé caught by unguarded
machinery, the undisputed evidence showed that it was not necessary
for the employé to go near the machine while performing his work,
and that the slippery condition of the floor would not have caused the
accident to the employé, had he not gone near to the machine, but there
was evidence that the foreman had directed the employé to go near the
machine, the employer was not liable, unless he was liable for the giv-
ing by the foreman of such order.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
228–231; Dec. Dig. § 121.*]

4. MASTER AND SERVANT (§ 190*)—OBLIGATION OF MASTER—COMMON-LAW
DUTIES—ORDERS.
   A master must, at common law, furnish a reasonably safe place for
a servant to work, and he must furnish him with reasonably safe ap-
pliances, and he must exercise reasonable care in the selection of fellow
servants; and a master, who provides a competent foreman, proper
appliances, and a safe place in which a servant may work, need not an-
ticipate that the foreman will issue an order inconsistent with the effi-
ciency and economy of the work, and which will expose the servant to
danger; and the act of a foreman in directing a servant to work near
an unguarded machine on a slippery floor, while the work was expected
to be done a safe distance from the machine, is not actionable negli-
gence of the master, and the servant, injured by coming in contact with
the machine, may not recover therefor.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
449–474; Dec. Dig. § 190.*]

5. MASTER AND SERVANT (§ 190*)—INJURY TO SERVANT—LIABILITY OF MASTER.
   A master is not responsible for the negligent performance of a detail
of the work intrusted to a servant, whatever the grade of the service.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
449–474; Dec. Dig. § 190.*]

Appeal from Trial Term, Queens County.
Action by Rudolph Manser, an infant, by John Manser, his guard-
ian ad litem, against the Astoria Veneer Mills.   From a judgment

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Warren C. Van Slyke (George M. Pinney, Jr., on the brief), for appellant.

George F. Hickey (M. P. O'Connor, on the brief), for respondent.

WOODWARD, J. The complaint alleges the employment of the plaintiff by the defendant at its veneer plant at Ryker avenue, Astoria, and that—

"while in the lawful performance of such work, and without any fault whatsoever on his part, his hair was caught in certain unguarded and unprotected cogwheels, being part of the machinery in defendant's said mills, and this infant plaintiff was pulled in by the hair, and a portion of his scalp was torn off, and his head was seriously injured, and all of which was solely caused by and solely the result of the negligence and carelessness of the defendant, its agents, and servants, in failing to give this infant plaintiff a reasonably safe and suitable place in which to perform his work, and in failing to properly guard and protect the said cogwheels in which plaintiff's hair was caught, but, on the contrary, leaving the same unguarded and unprotected, in violation of the provisions of chapter 415 of the Laws of 1897, known as the 'Labor Law of the State of New York,' and also by reason of the further negligence and carelessness of the defendant in employing this infant plaintiff when he was under the age of 16 years, and between the ages of 14 and 16 years, and in not having a certificate executed by a health officer," etc.

The plaintiff's bill of particulars further alleged that the—

"respect in which the place furnished to plaintiff in which to work was not reasonably safe and suitable is that the floor about the machinery where plaintiff was compelled to work was oily, dirty, and slippery, and that the cogwheel of the machinery about which he worked was unguarded and unprotected, in violation of section 81 of chapter 415 of the Laws of 1897," and that the "respect in which the cogwheels mentioned in plaintiff's complaint were not properly guarded and protected is that there was nothing about said cogwheel to prevent the same from coming in contact with the person of this plaintiff."

The issue fairly tendered by this complaint, as amplified by the bill of particulars, was that the plaintiff, while employed upon a machine in the defendant's plant, was injured by reason of the unguarded cogwheels, in connection with an oily, dirty, and slippery floor, when, as a matter of fact, the plaintiff was not employed to work upon a machine in the mill at all, but was engaged for the purpose of nailing cleats upon the ends of boards mounted upon a two-wheeled cart, after the same had been delivered in the yard of the mill by means of a long table, equipped with rollers and operated by cogs, which carried the lumber away from the machines. This table, known as a "conveyer," was 105 feet long, a trifle over 4 feet in width, and 34 inches in height. At intervals of about 4 feet there were rollers 18 inches in length, and extending crosswise of the table, and operated by cogwheels; some of the witnesses testifying that these were fully protected, while the plaintiff and his witnesses testify that they were exposed at the ends. This table extended away from the mill out into the yard, and the duty of the plaintiff was to go to a build-

ing about 75 or 80 feet from where he was injured, get his cleats, and go to the "buggy," at a distance of about 30 feet from the place where he was injured, and nail them upon the ends of the boards mounted upon this "buggy."

[1] His place of employment was the lumber yard of the defendant, and his duties had no relation whatever to the machine (the table with rollers) which concededly worked the injuries, and the learned trial court properly held that the plaintiff had no standing under the provisions of the labor law, except as the leaving of the cogwheels unguarded might have a bearing upon the question of the reasonable safety of the place afforded him for his work. The theory upon which the case was tried, and upon which it was given to the jury, was that at the particular point of the accident there was a mixture of oil and sawdust, causing a slippery condition of the floor, which had not been observed by the plaintiff during his 9 or 10 days employment there, though being familiar to some of the other witnesses, and that the plaintiff, having been instructed by his foreman to place the cleats under this table and to take them from thence to the point where they were to be used, had, in obeying this instruction, stepped upon this slippery place and slipped, throwing him into the unguarded cogwheel, producing the injuries. The learned trial court in its charge to the jury said:

"A very important question here  *  *  *  relates to the directions which the plaintiff says were given by Mr. Augustine, the foreman, to the young man to carry the cleats from the place where they were found, and put them under the table, and then take them from there to the place where they were to be nailed onto the boards. He says those were the instructions which were given to him. On the other hand, Mr. Augustine says that he gave him no such instructions; that he was told to take them directly over to where the buggies were.  *  *  *  That is an important question in the case, for this reason: If such direction was not given, if you shall take the story of Mr. Augustine in preference to the story of the plaintiff,  *  *  *  and you shall say no such direction was given to put those cleats under the runway, and that the placing of them there was the voluntary act of the plaintiff himself, that defeats his cause of action."

Again the court said:

"So you see, gentlemen, it is quite important to give consideration to every question in this case, not only the question of direction, but the question of conditions which were there, the question of the direction of the work given by the foreman, and the claim that a part of the direction in connection with the work was the putting of the cleats under the table at this particular place, where, as the plaintiff says, he was exposed unwarrantably, and in violation of the master's duty, to accident and injury, even while he was exercising due care on his part."

[2] It is true that this charge was not excepted to on the part of either party, but the defendant's exception to the denial of his motion to dismiss the complaint fairly raises the issue, as well as the order denying the motion for a new trial on the usual grounds.

[3] The respondent, evidently recognizing the weakness of the case upon the theory thus presented, urges upon this appeal that the proximate cause of the accident was, not the alleged direction of the defendant's foreman, but the slippery condition of the floor at the point of the accident; but it is very certain that, if the plaintiff had not been

nearer to the table than was necessary in merely performing the services for which he was employed in the natural way, the slippery floor would have been of no moment in the case. The accident could not have happened. The undisputed evidence of both parties is that it was not necessary for the plaintiff to go anywhere near to this table, either in getting the cleats supplied by the defendant, or in nailing them to the boards upon the buggies. Indeed, the evidence is, on behalf of both parties, that the plaintiff, in following out the alleged instructions of his foreman, would require much more time than in merely going to and from the building where the cleats were kept and the buggies, and the only possible relation of the slippery floor to the accident which befell the plaintiff was due to the fact that the plaintiff had placed, or was placing, these cleats under the table. In other words, the crucial fact in the case, upon the theory on which it was given to the jury, was whether the foreman had given an order that the cleats should be placed under this table. Unless such an order had been given, there was no possible reason for the plaintiff to be where he was at the time of the accident. He could not have been there in the discharge of his work, and the master owed him no duty to see that the floor at this point was in a safe condition.

[4] It being clear, then, that the verdict must rest upon the alleged order of the foreman, let us consider for a moment the duties of the defendant, under the common law, for no question of the employer's liability law is here involved. What are the duties of the master? He is bound to furnish a reasonably safe place in which his servant is to perform his work, he is bound to furnish him with reasonably safe tools and appliances, and he is bound to exercise reasonable care in the selection and employment of those who are to participate in the work. No one has suggested that the defendant had failed in the discharge of its duty in the selection of fellow servants of the plaintiff. No one questions the competency of Mr. Augustine as foreman of the establishment. There is evidence undisputed that the defendant had supplied the plaintiff with the cleats and the nails and hammers necessary to perform his work, which was of the simplest character, requiring practically no instructions. The place provided by the defendant for the plaintiff to work was the millyard, and the performance of this work, in so far as the master was concerned, required merely that the plaintiff should go to the warehouse and get his cleats, return with them to the buggies, and nail them on; and this did not, as we read the record, require him to go nearer than 30 feet to the point where the accident occurred. Clearly the master could delegate to a competent foreman the details of the work which was being carried on in that lumber yard. Having provided a competent foreman, proper tools and appliances, and a place which was safe for the performance of the duties required of him, the master was not bound to anticipate that the foreman would issue an order inconsistent with the efficiency and economy of the work, and which would expose the plaintiff to the danger which he has encountered. The duty of the master was complete when he had used reasonable care in the selection of fellow servants. He was not bound to follow

up such servant and see to it that he did not issue unreasonable orders. That was one of the risks which the contract of employment implies, and the risk cannot be shifted to the employer without an act of the Legislature, and no such act is here involved.

[5] The rule is well settled, in common-law actions, that the master is not responsible for the negligent performance of some detail of the work intrusted to the servant, whatever may have been the grade of the servant who executes such detail. If it is the work of the servant, and he volunteers to perform it, and the master is not at fault in furnishing proper materials, there is no breach of duty on the part of the latter. Kimmer v. Weber, 151 N. Y. 417, 422, 423, 45 N. E. 860, 56 Am. St. Rep. 630.

In the case now before us, the general place for the plaintiff to perform his work was the millyard, and his duties required him to go to a warehouse, procure his materials, and nail the cleats upon boards upon the buggies; and all of these duties could be discharged in the most economical way, without the plaintiff being anywhere near the machine which injured him. This machine or table was 105 feet long, and the rollers, requiring oil, were a little over 4 feet apart, and there is no evidence that there was any other place along the whole length of this table where there was any oil, or any danger to be apprehended, and there is no evidence that the defendant's foreman designated this particular spot for piling these cleats, assuming him to have given an order in the premises. The plaintiff admits that he was free to place his cleats at any point under this table of 105 feet in length, and to say that a master, having fulfilled all of his obligations in reference to employés and their tools and appliances, is bound to see to it, not only that the foreman does not give foolish orders, but that the servant, in obeying these orders, does not himself make a poor selection of a place within a range of 105 feet, where no other defect is suggested, is entirely unreasonable, and therefore not the law of this state.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event. All concur.